# ANTHONY L. RICCO

*Attorney At Law*

20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919  FAX. (212) 964-2926
EMAIL: tonyricco@aol.com

Steven Z. Legon
*Of Counsel*

May 8, 2020

Hon. Sidney H. Stein
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  **United States v. Louis Griffin**, *et al.*, *including Farris Phillips*,
Docket. No. S15 94  Cr.  631 (SHS)

Dear Judge Stein:

The defendant, Farris Phillips, has written a *pro se* application to the court requesting relief pursuant to the First Step Act, 18 U.S.C. §3582(c)(1)(A)(I), to modify his sentence and immediately release him to home detention until his March 2023 release date, to be followed by the already-imposed three years of supervised release.  See, Exhibit A.  This letter is submitted by attorney Peter E. Quijano, Esq., and myself, to supplement Farris Phillips *pro se* application.

## I.  Argument for Relief Requested

Farris Phillips requests that the court reduce his custodial sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which authorizes the Court to "reduce the term of imprisonment and to impose a term of probation or supervised release.  At the core of Farris Phillips' application is the national emergency resulting from the worldwide Coronavirus Disease (COVID-19) pandemic.

On January 30, 2020, as a result of the emergence of the COVID-19 virus, the World Health Organization declared a worldwide pandemic.[1]  On that same date in the United States, where for weeks

---

[1]  A pneumonia of unknown cause detected in Wuhan, China was first reported to the WHO Country Office in China on 31 December 2019.  The outbreak was declared a Public Health Emergency of International Concern on January 30, 2020.  https://www.statnews.com/2020/03/11/who-declares-the-coronavirus-outbreak-a-pandemic/

state and local laboratories could not test for the virus, just over 1,000 cases had been diagnosed and 29 people had died. On March 7, 2020, as a result of the spread of COVID-19 infection, Governor Andrew Cuomo issued Executive Order 202, which declared a State of Emergency in the State of New York. Four weeks later, the numbers had increased exponentially.

As of the date of Farris Phillips' *pro se* request on April 6, 2020, the numbers had skyrocketed. At that time, an astounding 337,000 plus cases of COVID-19 infection had been diagnosed, and 9,600 had died (with 940 deaths reported on one day - April 1, 2020) in the United States. To date, in just 30 days, those deadly numbers have skyrocketed to a mind numbing 1,281,246 diagnosed cases of COVID-19 infection and 76,901 deaths. The impact on the criminal justice system has been jaw-dropping. As of April 27, 2020, the New York City Department of Correction reported over 966 staff and 381 detainees infected, with 1,400 out of just below 5000 detainees released to prevent the deadly spread. To date, the New York City Department of Corrections has disclosed that there has been 3 detainee deaths attributed to the COVID-19 pandemic.[2]

The Bureau of Prisons updated its website on May 8, 2020, and reports that 3082 inmates and 248 staff members have tested positive for the COVID-19 infection. There has been 45 federal inmate deaths (ages range from 43 to 81 years) and 1 known staff member death attributed to the COVID-19 pandemic.[3] See also, Wall Street Journal, March 31, 2020, "*Federal Prisons Heighten Restrictions to Stem the Spread of Coronavirus.*"

In response to the escalation and spread of COVID-19 infection in prisons, the Attorney General has identified FCI Danbury as one of three federal prisons where immediate action is required

---

[2]     https://www1.nyc.gov/assets/boc/downloads/pdf/News/covid-19/Public_Reports/Board%20of%20Correction%20Daily%20Public%20Report_4_27_2020.pdf

[3]     https://www.bop.gov/coronavirus/

to stem the escalating spread of COVID-19 pandemic inside the prisons. The Attorney General has observed that the virus is "an emergency condition" that is "materially affecting operations" at the FCI Danbury facility. Exhibit B at 1 (Attorney General William Barr, *Memorandum for Director of Prisons Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Apr. 3, 2020). The Attorney General has directed the Bureau of Prison to prioritize the use of home confinement as a tool for combating the escalating dangers that the COVID-19 pandemic poses to vulnerable inmates. *Id.* The Attorney General has directed that those inmates who are at the high risk categories, as established by the Centers for Disease Control and Prevention, be considered as candidates for home confinement rather than continued detention at institutions where COVID-19 is materially affecting their operations.

Farris Phillips is at High Risk of COVID-19 Infection

The Centers for Disease Control and Prevention (CDC) has established a set of protocols designed to identify those incarcerated detainees and sentenced inmates who are at *high risk* of COVID-19 infection. Those protocols include categories for those over the age of 65, and for all people with pre-existing medical conditions.[4] Farris Phillips is pre-diabetic and suffers from high-blood pressure and spinal stenosis, which is a degenerative disc disease resulting from multiple gun shot wounds to his back 30 years ago. The Bureau of Prisons treats Farris Phillips for these pre-existing conditions. Each day, Farris Phillips is administered (1) Carvedilol for heart failure and hypertension; (2) Hydrochlorothiazide for high blood pressure and fluid retention; and (3) Lisinopril for high blood pressure as well. The medications are all in the category of Angiotensin Converting Enzyme Inhibitors

---

[4] The Centers for Control Disease and Prevention has identified categories of all people who are at high risk of serious infection; to wit: those over the age of 65 and, people of all ages with underlying medical condition, including, inter alia, Chronic lung disease or moderate or severe asthma, serious coronary conditions, immunocompromised (including cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV, AIDS prolonged use of corticosteroids and other immune weakening medications, severe obesity, diabetes, chronic kidney disease undergoing dialysis or liver disease.
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

(ACE Inhibitors) which are medications that slow and decrease the production of angiotensin II, which facilitates the enlargement of blood vessels and reduces blood pressure.

As a result of the living in cramped conditions in a jail, Farris Phillips is unable to engage in social distancing to mitigate his exposure to COVID-19 infection and to take other reasonable measure to protect himself from infection. With his pre-existing conditions, Farris Phillips is at high risk of an increasing escalating deadly disease.

The CDC has warned that these individuals, who may have one or more of these categories, are particularly susceptible to the deadly infection, and that appropriate action should be taken to preserve their lives. Farris Phillips is in the above category, and suffers from several pre-existing conditions which place him at high risk of infection, but zero action is being taken to preserve his life.

Farris Phillips is an inmate whose projected release date is March 30, 2023, and whose home detention eligibility date is September 30, 2022. He has a preexisting medical condition that puts him at high risk of high risk of infection and renders him an inmate eligible to be considered for early home confinement - rather than continued detention.

The impact of this highly contagious, high mortality rate COVID-19 disease will be present for us all for many months to come and well into the near future. Farris Phillips' application is not a quick fix to this intense problem, but instead is part of a long term effort to prevent the unwarranted loss of life to all, but especially those at risk; high risk or moderate risk of the deadly infection. The solution Farris Phillips proposes requires an assessment of whether his release to home detention involves a risk to the public safety.

The early decisions have been favorable to those in harm's way, who are politically connected and have access to superior influential counsel. More difficult decisions remain in for those such as Farris Phillips who are from the groups of people whom - just as in the general population - are disproportionately represented in the COVID-19 staggering death tolls. These detainees and inmates

will have a harder time convincing a court that they can be trusted outside of a prison environment. Naturally, the decision maker will look to the crime committed. But what is equally important is a fair consideration of the age of offender when the crime was committed, the length of incarceration served and the quality of the inmate's institutional records. These three factors must be given meaningful consideration. In the absence of meaningful consideration, the message that our government provides to those who committed violent crimes, including murder, is that you "need not apply, you must endure the risk of certain infection" that others have been spared.

If this court gives these three factors meaningful consideration, the court will find that Farris Phillips has been an respectable inmate who has grown tremendously over the past nearly three decades, and who has earned the right to be considered for release so that his life to be spared from the harm's way of the deadly COVID-19 virus. These factors are discussed below.

Underlying Criminal Conduct

Farris Phillips was convicted of participating in a notorious murder racketeering conspiracy known as the "142nd Street Lynch Mob." This group was headed up by the notorious Louis Griffin, who recruited young teens to extort drug dealers through the fear of kidnaping and murder. Farris Phillips was one of several teens and young adults from broken homes in Harlem who Louis Griffin recruited to conduct these acts of violence from 1988 through 1994. In connection with the prosecution, Farris Phillips ultimately pled guilty to a three count information which charged him with engaging in racketeering in violation of 18 U.S.C. § 1962(c)(count one), the use and possession of a firearm in relation to a crime of violence (murder of Carlton Henry in furtherance of racketeering in violation of 18 U.S.C. § 924©, and conspiracy to assault Harold Brown with a deadly weapon in relation to racketeering in violation of 18 U.S.C. § 1959(a)(6) and 2.

On March 14, 1997, Judge John S. Martin sentenced Farris Phillips to a total of 28 years imprisonment as follows: 20 years on count one, 5 years on count two, and 3 years on count three, to

be followed by 3 years of supervised release.[5] The federal sentence was imposed consecutive to the 2 ½ to 7 ½ year sentence Farris Phillips was serving in New York state prison when he was writted into federal custody to face the federal racketeering charges. Farris Phillips has been in continuous custody for nearly 28 years. Farris Phillips is now 48 years old and has been imprisoned for decades, having served nearly 96 percent of his federal sentence. Over that time period, the once feared street teen has turned his life around. Farris Phillips has grown to become a well respected and admired inmate, not as a result of any gang affiliation (he has none), not as result of institutional violence (his only infraction for violence occurred when he fought back against a gang of detainees who jumped him when he first arrived at the Metropolitan Correctional Center as a young detainee in the fall of 1994), not for his prowess in engaging in a network of institutional contraband, but rather for the manner in which he conducts himself, and for his personal, intellectual and positive social growth over a period of decades. Farris Phillips has inspired hope that an individual can redeem himself from the crimes of his youth, still an important hope of achievement of many - especially those incarcerated who face long prison sentences.

Unlike others who have been released - - such men like Dean Skelos and Michael Avenatti - - Farris Phillips has already served more than 97 percent of his sentence of incarceration. As stated above, according to BOP records, Farris Phillips' Projected Release date is March 30, 2023 and his Home Detention Eligibility date September 30, 2022. There is nothing about Farris Phillips' actual prison record that would indicate that were this court to accelerate that release date, Farris Phillips would pose a greater risk of a threat to the community. To the contrary, Farris Phillips' institutional records indicates that he is at no risk to the general public, and that fact is true with his regular eligibility

---

[5] Farris Phillips was produced in the United States District Court for the Southern District from Downstate Correctional Facility pursuant to a writ of habeas corpus ad prosequendum on August 2, 1995 for arraignment in the case *United States v. Louis Griffin*, et al., (S6) 94 Cr. 631 (AGS). After his sentencing on March 14, 1997, Farris Phillips was returned to the New York State Department of Corrections to complete a term of incarceration on a state robbery charges.

for home confinement is scheduled for September 30, 2022.

Farris Phillips seeks to be released from detention now, since his pre-existing medical conditions place him at high risk of COVID-19 infection (based upon the categories established by the Centers for Disease Control and Prevention), rendering his continued confinement at the Danbury Federal Correctional Center exposing him to an unnecessary high risk of contracting the deadly virus. Therefore, through his undersigned counsel, Peter E. Quijano, Esq., and Anthony L. Ricco, Esq, Farris Phillips, respectfully moves the Court under 18 U.S.C. § 3582(c)(l)(A)(I) to modify his sentence and immediately release him to home confinement until his March February 26, 2023 release date, to be followed by the already-imposed three year term of supervised release. The unprecedented threat of COVID-19 could not have been foreseen at sentencing, and poses extraordinary risks to Farris Phillips' health, which Attorney General Barr has recognized at the FCI Danbury, where Farris Phillips is presently housed.

## II.  Applicable Law

Under 18 U.S.C. § 3624(c)(2), a prisoner such as Farris Phillips may be placed "in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Accordingly, under normal circumstances, the defendant would be eligible for release to home confinement on September 30, 2022. However, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020).

Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the

BOP's authority to expand the amount of time that a prisoner may spend in home confinement. Mem. for Director of BOP, Def.'s Ex. B at 1 (Apr. 3, 2020). In particular, the Attorney General acknowledged the "significant levels of infection" at FCI Danbury, and instructed the BOP to "move with dispatch . . . to move vulnerable inmates out of [this] institution[]." *Id.* Accordingly, on April 5, 2020, the defendant submitted a letter to the warden of FCI Danbury formally requesting transfer to home confinement. On April 9, 2020, the defendant filed another letter with the warden, this time formally seeking compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(I). To date, Farris Phillips has not received a response from the warden.

Separate and a part from the statutory provisions regarding home confinement, the First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons" warrant such release. 18 U.S.C. § 3582(c)(1)(A)(I).

There are four prerequisites for a court to consider in granting compassionate release under the First Step Act.

First, the defendant must have exhausted his administrative rights with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).

Second, the court must find that "extraordinary and compelling reasons warrant" release. 18 U.S.C. § 3582(c)(1)(A)(I).

Third, the court must consider the factors set forth in 18 U.S.C § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A)(I).

Exhaustion of Administrative Rights

A prisoner exhausts his administrative rights when the BOP fails to bring a motion for compassionate release on his behalf and he exercises all administrative rights to appeal, or after "the

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A)

In this case, Farris Phillips has not exhausted his administrative remedies with the Bureau of Prisons, as he made his requests for release to the warden of FCI Danbury on two prior occasions, both fewer than thirty days ago.

The Second Circuit, however, has held that the exhaustion of administrative remedies is not absolute. "Even where [administrative] exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr* 925 F.3d 109, 118 (2d Cir. 2019). A court may waive an administrative exhaustion requirement "where [exhaustion] would be futile, . . . where the administrative process would be incapable of granting adequate relief . . . [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice." *Id.* at 118–19 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–48 (1992), *superseded by statute on other grounds as recognized in Booth v. Churner*, 532 U.S. 731, 740 (2001)). "[U]ndue delay, if it in fact results in catastrophic health consequences," can justify waiving an administrative exhaustion requirement for any of those three reasons. *Id.* at 120–21.

The escalating COVID-19 outbreak at FCI Danbury, combined with the fact that Farris Phillips is at high risk of suffering severe complications if he were to contract COVID-19 as a result of his pre-existing medical conditions, justifies waiver in relation to the application before the court. *See, United States v. Zuckerman*, No. 16 Cr. 194 (AT) (S.D.N.Y. Apr. 3, 2020), ECF No. 116; *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *3, *3 n.3 (S.D.N.Y. Apr. 1, 2020); Def.'s Ex. A at 1 (acknowledging "significant levels of [COVID-19] infection" at FCI Danbury). The delay that the defendant would experience if he had to wait for thirty days to expire before pursuing a motion for compassionate release in this court would put him at significant risk of suffering catastrophic health consequences. *See, e.g., Perez*, 2020 WL 1546422, at *3. In fact, given the COVID-19 outbreak at FCI Danbury, any delay,

9

whatsoever, puts the high risk defendant in jeopardy of contracting the deadly infection.

There are, in fact, extraordinary and compelling reasons to warrant Farris Phillips' release from prison. See, 18 U.S.C. § 3582(c)(1)(A)(I). The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("USSG"); see United States v. Ebbers, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399 at *4 (S.D.N.Y. Jan. 8, 2020); United States v. Bellamy, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2 (D. inn. July 25, 2019). While the defendant's pre-existing medical conditions does not per se place him squarely within any of the Policy Statement's definitions of "extraordinary and compelling reasons," see USSG § 1B1.13 cmt. n.1(A)–(D), the defendant asserts that the COVID-19 pandemic, combined with his high risk of serious illness or death from the COVID-19 infection due to his present medical condition, combine to constitutes an "extraordinary and compelling reason" favoring his release.[6]

Application of 18 U.S.C. § 3553(a)

The district court must consider the factors under 18 U.S.C. § 3553(a) in deciding whether to grant compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Under § 3553(a), the court must consider what is "sufficient, but not greater than necessary, to comply with the purposes of [sentencing]." § 3553(a). In particular, the court must consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[6] District courts have taken various positions regarding the level of deference that they should afford to the Sentencing Commission's Policy Statement in assessing whether extraordinary and compelling reasons for release are present. See Ebbers, 2020 WL 91399, at *4 (deeming the Policy Statement "at least partly anachronistic" because it pre-dates the First Step Act but "nonetheless[] helpful in defining a vague standard"); United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (concluding that district court may make "independent assessment" of whether extraordinary and compelling reasons exist); see also United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release.").

(2)	the need for the sentence imposed -

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

© to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)	the kinds of sentences available;

(4)	[the kinds of sentence and sentencing range provided for in the sentencing guidelines;

(5)	any pertinent Sentencing Commission policy statement;

(6)	the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)	the need to provide restitution to any victims of the offense.

In considering the above factors, the court can consider and "should assess whether [they] outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *Ebbers*, 2020 WL 91399, at *7. There is no question that Farris Phillips was involved in dangerous criminal conduct during his teenaged and young adult years, however, that concern does not preclude the consideration of releasing him from prison to avoid the consequences of a potentially deadly virus for which he is at high risk of infection. An important factor in Farris Phillips' favor is that he has virtually completed a very substantial prison sentence, and that during the service of his prison sentence, he has had only two infractions.[7] Having spent decades improving his status and striving towards his redemption, Farris Phillips is within months of the date on which he would be eligible for release to home

---

[7]	When Farris Phillips was first writted into federal custody, he was jumped by a group of detainees in the welcoming committee at the Metropolitan Correctional Center in 1995.

confinement under normal circumstances.   *See* 18 U.S.C. § 3624(c)(2).[8]

The court must consider whether release is consistent with the Sentencing Commission's policy statements. *See,* 18 U.S.C. § 3582(c)(1)(A)(I).   In particular, the court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG § 1B1.13(2). The 18 U.S.C. § 3142(g) factors are, for the most part, the same as those set forth in 18 U.S.C. § 3553(a).   *See,* 18 U.S.C. § 3142(g).

Farris Phillips Institutional Record/Post Conviction Rehabilitation

As the court can determine from the various letters in support, which are attached to this application, Farris Phillips has accomplished a great deal over the past decades which reflects upon whether he poses a present threat to our community.   From an institutional standpoint, Farris Phillips has successfully participated in and completed more than 60 Bureau of Prisons educational programs designed for self improvement and eventual reentry into society.   Farris Phillips has also been an outstanding role model for young offenders, and with the exception of two episodes, has had an outstanding institutional record.   Former inmates and friends inform the court of the manner in which Farris Phillips evolved into a positive role model who has inspired so many to achieve their goals.

In addition to the foregoing, Farris Phillips is proud of the relationship that he has with his son, Fabian Phillips, who was about 5 years old when Farris Phillips began serving his present sentence. Through his guidance and love, Farris Phillips has helped Fabian Phillips grow up to be a well adjusted and successful young adult.   In so doing, Farris Phillips has helped break a pattern of incarceration and violence that has extended back three generations in his family.   See, "Rings: On the Life and Family of Collis Phillips (as Southern Fighter)," by Randy Bates, published by Farrar Straus & Giroux 1992.

In the book "Rings," we learn that in 1979, a young Harvard professor named Randolph Bates

---

[8]       The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months

began to chronicle the life journey of Collis Philips, the grandson of enslaved African Americans, who in the early years of the 20th Century overcame the crippling obstacles of brutal racism in New Orleans and became a champion boxer who was later shot and seriously injured by one of his daughters at the height of his career. Collis Phillips, who had served time in Angola Penitentiary also endured the suicide of one son, the life and long term prison sentences imposed upon two of his other sons (Farris Phillips' dad Alvin and uncle Faris) to also be served at Angola State Penitentiary - once deemed one of the most dangerous and bloodiest prisons in our nation. Randolph Bates traces several generations of the Phillips family from Collis Phillips' great-grandfather, a white planter, to the current generation's struggle to break out of a cycle of poverty, crime and racism. Although serving a substantial sentence, Farris Phillips has helped his son break the vicious cycle that pulverized and derailed the formative years of his own life and those of his parents, grandparents and other family members since their enslavement on Louisiana plantations in the 19th Century.

While Farris Phillips' efforts to change this sad legacy may, to some, seem of little importance, it is, in fact, a powerful act taken on behalf of a young man determined to seek his redemption and to change the trajectory of his family history. As the court can determine from the many letters submitted to support his release, Farris Phillips - - the boy who was once discouraged from pursuing education, the young boy whose mother's life was destroyed by the ravages of drug addiction (died from a heroin overdose during the years of his incarceration), and whose father and male family members served staggering prison terms, and who was socially led to criminal conduct at an early age, has accomplished much while incarcerated, which are formidable reflections of his personal transformation and commitment to redemption. At the time of the plea negotiations, there were many conversations with A.U.S.A. Lev Dassin about Farris Phillips tragic family history, and his corruption into criminal conduct at a very young age. It was the hope of all involved both government prosecutors and defense counsel

that although a lengthy prison sentence was required, that Farris Phillips would grow and that he would seek his redemption. There is no question that Farris Phillips has fulfilled the expectation that everyone had for him at that time, including the government prosecutors and Judge John S. Martin who imposed his sentence.

Upon his release from prison, Farris Phillips will reside at home of Ms. Latonia Jacobus, his fiancé, and there is no reason to believe that he would pose any risk to the public, and has been promised assistance with employment as a counselor for at risk youth who life trajectory is presently every similar to the path that he has traveled.

Farris Phillips has developed into a special man, who has a great deal to offer his family and our society. Rather than pose a risk, Farris Phillips will conduct himself in a manner to honor a decision of leniency by this court and to prevent him from the risk of contracting the deadly COVID-19 virus. Farris Phillips does not pose any danger to the public so as to outweigh the factors militating in favor of his release. Therefore, it is requested that the court grant Farris Phillips' motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). And it is furthered requested that the court issue the following Order:

1. The motion by defendant Farris Phillips for compassionate release be granted;

2. The defendant's prison sentence be reduced to time served;

3. The warden of FCI DANBURY shall forthwith release from custody the person of defendant Farris Phillips;

4. Defendant Farris Phillips shall not spend 14 days in quarantine at FCI DANBURY prior to his release, but shall be released immediately upon the institution's receipt of this court's Order, and shall instead spend 14 days in quarantine at the place he shall reside;

5. Defendant Farris Phillips shall be on supervised release status, with home confinement for a period of 6 months;

6.   For that 6-month period and for 3 years thereafter, defendant Farris Phillips shall abide by all the terms and conditions of supervised release that were previously imposed on him and are memorialized in his judgment of conviction.

7.   Upon his release from FCI DANBURY, defendant Farris Phillips shall proceed immediately to 200 West 147th Street, Apartment 5-C, New York, New York (Residence of fiancé Latonia Jacobus), where he shall reside during his term of home confinement and supervised release;

8.   Farris Phillips must notify the Probation Department for the Southern District of New York upon his arrival at the residence, and is directed to follow the instructions of the assigned probation officer, as well as the conditions of supervised release imposed at the time of his sentence;

9.   For a period of 6 months from the date of his release from prison, Farris Phillips shall be under 24-hour home incarceration to be enforced by location monitoring, using specific technology to be determined by the Probation Department. The defendant may only leave the Residence for necessary medical services with advanced notification, and approval if time permits, from the Probation Department. All other leave from the Residence must be submitted through defense counsel for the court's approval;

10.  In addition, for the first 14 days of his term of home confinement, defendant Farris Phillips shall remain in quarantine at the Residence, and shall be allowed no contact with any other person other than his fiance, and family who live in the Residence, except for medical personnel in case of emergency;

### III. Conclusion

For all of the reasons set forth above, Farris Phillips requests that the court reduce his custodial sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) which authorizing the Court to "reduce the term of

imprisonment (and may impose a term of probation or supervised release with or without the conditions that does not exceed the unserved portion of the original term of imprisonment," and for three years thereafter Farris Phillips shall abide by the all the terms and conditions of supervised release were previously imposed on him and that are memorialized in his judgment of conviction dated and filed in this court back on March 19, 1997.

Respectfully submitted on behalf of *Farris Phillips*

*Anthony L. Ricco*
Anthony L. Ricco


*Peter E. Quijano*
Peter E. Quijano


ALR/jh

# EXHIBIT A

# Iatonia Jacobus



**From:** PHILLIPS FARRIS (37765054)

**Sent Date:** Sunday, April 5, 2020 8:35 PM

**To:** Tonia71119@gmail.com

**Subject:** print this is send to the judge name and address.

Hon. Judge Sidney Stines
500 Pearl St.
New York, NY 10007

Honorable Judge Sidney Stines,

04/06/2020

United States-vs-Farris Phillips Case No. 94-cr-631 in Re:

1. Defendant, Farris Phillips, requests that the Court modify his sentence pursuant to 18 U.S.C. 3582 (c)(1)(A) due to extraordinary and compelling reasons warranting a reduction of sentence as shown in this motion and Defendant's DECLARATION IN SUPPORT OF MOTION FOR SENTENCE MODIFICATION UNDER 18 U.S.C. 3582 (c)(1)(A)

2. Exhausted Administrative Remedy- The government is likely to renew its objection based upon failure to exhaust administrative remedies. I respectfully request that this Court find that the existing remedy process is unavailable and futile against the backdrop of the COVID-19 pandemic and its systemic infiltration at F.C.I. Danbury, for the following reasons.

3.  First, I have no access to proper forms, or the ability to obtain photocopies in order to properly compile them. More specifically, I recently handed a request directly to the Warden who flatly told me that she would not be responding in the midst of the crisis.
   Secondly, even if the warden did not respond after the crisis it will likely be too late to prevent either the deterioration of my current health, and/or my increased likelihood of contracting COVID-19. In other words, the Wardens admitted delay in responding will be tantamount to slamming the barn door after the horse escapes.
   For thus reasons, I respectfully submit that the B.O.P. remedy process is both unavailable and futile.

   According to a Memorandum issued by Attorney General Barr, there are currently 91 confirmed cases within the B.O.P. of inmates, plus at least 50 staff members. There have been seven inmate deaths, In the same memorandum, General Barr stated that "it is believed that those numbers understated the real figure and that hundreds of inmates and staff are likely infected." As of today, there are at least 26 cases right here at F.C.I. Danbury.

See Cases-

United States-vs-Colvin, No. 3:19-cr-179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2,2020) "She has diabetes, a serious....medical condition, which substantially increases her risk of severe illness if she contracts COVID-19 ... Defendant is unable to provide self-care within the environment of F.D.C. Philadelphia in light of the ongoing and growing COVID-19 pandemic because she is unable to practice effective social distancing and hygiene to minimize her risk of exposure, and if she did developed complications, she would be unable to access her team of doctors at Bridgeport Hospital. In light of the expectations that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will be minimized by her immediate release home, where she will quarantine herself.

United States-vs-Foster, No.1:14-cr-324-04 (MD PA. Apr.3, 2020) The circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is no stretch to call this environment extraordinary and compelling and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not be expected to recover" U.S.S.G.1B1.13 "No rationale is more compelling or extraordinary."

United States-vs-Brannan, No.4:15-cr-08-01 (SD T2 Apr. 2,2020) Though not reflected in order, emergency motion was granted on the same day of filing for prisoner who had served only 9 months of a 36 months sentence for fraud at F.C.I. Oakdale and had not exhausted B.O.P. remedies.

4. I recently spoke with the Warden after handing her the letter. She then informed me that she received the electronic request. She stated that there was too much going on with the facility right now and wouldn't be processing anyone's motions or paperwork until the pandemic passes.

5. I am currently in custody of the B.O.P. at Federal Correctional Institution of Danbury, Connecticut. I arrived here 5 1 /2 years ago and since COVID-19I haven't seen a doctor and I was told that there will not be one until they get control of the Corona Virus.

6. I come to the Court as an emergency because of the widespread pandemic of COVID-19. As the Court is aware I am pre-diabetic, I suffer from high-blood pressure, and spinal stenosis, which is a disc degenerative disease as a result from multiple gun shot wounds in my back, in addition to other medical conditions I am experiencing. The reason why this is very important is because Danbury has more cases of COVID-19 than any other prison in the B.O.P.. We live in a dormitory area where people are literally laying on top of one another because it is a such a cramped living area people are getting sick faster. Some people don't speak up about their sickness assuming they can recover causing the spread of the illness.

7. I was indicted 1994 on Racketeering charges, sentenced in 1996 to 33 years. I have currently served 27 years without any major incident reports, violence, or any other issues to speak of.

8. Educational Programming-For the past 27 years in the B.O.P. I have taken full advantage of the programming offered. Along with the programming I was a mentor to younger inmates to help them stay clear of gangs and the violence associated with them. In addition, I have learned the trade of Masonry as well as other trades. I took full advantage of programming throughout my journey through the B.O.P. with over 60 programs. I am currently housed in a low security level institution and have been here for 10 years.

9. Home Plan and Family Support- I have strong family ties with a son of 32, 5 brothers, a sister, as well as aunts and uncles, and am a grandfather to three, who support me both here and on the outside. They have all come to see me frequently as well as my fiancee' and her children. One of her son's has Autism and I am a big inspiration in his life. This is where I am going once I am released.

10. In Summary, "There is no rationale more compelling than saving a life." With the reasons listed above combined with my multiple medical conditions please see that I am removed from a place where the virus is running rampant, sent home where I can get proper timely medical care, and not have a greater chance of contracting COVID-19 thus potentially ending my life through exposure.

11. Relief Requested- Defendant humbly requests that the Court release Defendant from custody of the B.O.P., so he may seek appropriate medical care and not inter the virus COVID-19 while detained at F.C.I. Danbury with his existing medical conditions.

Respectfully Submitted
        /s/

Farris Phillips
Prisoner No. 37765-054
F.C.I Danbury
33 1 /3 Pembroke Rd.
Danbury, CT 06811

United States Courthouse

For the Southern District of New York

500 Pearl St. New York, NY 10007-1312

April 10th, 2020

Re: Letter of Employment, Farris Phillips, Prison # 377-65-054

Dear Honorable Judge Sidney H. Stein:

In Arms Reach ("IAR"), Inc., Parents in Prison, Children in Crisis, is a nonprofit 501 c 3
community based art, music, counseling and academic mentoring program. IAR is located at The
City College University of New York (CUNY). Our goal is to empower young people, often
traumatized and stigmatized by parental incarceration, to lead healthier, productive, crime free
lives. We aim to strengthen family ties by arranging for youth to visit their parents in prison free
of charge. We also engage kids in STEM and Coding concepts to expose them to 21st century
workforce skills.

In Arms Reach, Inc. was featured nationally in the PBS series of Harvard scholar Dr. Henry
Louis Gates' documentary, The African Americans: Many Rivers to Cross. Dr. Gates supports
our work in the community for children impacted by parental incarceration. Our founding board
member is NYS Supreme Justice Jerome W. Marks (RET.) 2011

On behalf of our board of directors, staff, children and families we serve, we are writing
respectfully to request that outside of 2 decades plus years of imprisonment, prisoner role model
status, his substantial rehabilitation record, and in light of the tragic coronavirus, that the federal
penal system exercise every consideration to release Farris Phillips #377-65-054 to parole within
the Department's supervision.

Recently, we spoke with family members of Mr. Phillip's, his aunt and son who were home with
Mr. Phillip granddaughter and working remotely. We were sadden to hear of Mr. Phillip's
declining health. He suffers loss of taste, fever, high blood pressure and other medical
complications.

After a sufficient review of Mr. Phillips institutional accomplishments, we were pleased to learn
that in over ten (10) plus years, Mr. Phillips have not broken any prison rules nor have he been
cited for any prison infractions. We were very impressed with Mr. Phillip's programmatic
performance. Most importantly, Mr. Phillip's excellent facilitating ability and his willingness to
help others. He's humble and charismatic. Mr. Phillip's deep passion for learning various

institutional skills and his ability to speak from experience will surely resonate with kids at our agency who need a bit of guidance and are looking for a mentor. We view, value and label Mr. Farris Phillip's potential release to society as a marketable skill to our youths and an asset to our community. We believe that, if given the chance, Mr. Phillip will become a very capable staff member displaying his many rehabilitated talent and skills.

Therefore, we are proud to announce that upon his release Farris Phillips will be offered training and immediate job placement within our agency's Youth Division and its College Prep program ("CPP"). CPP services youths of incarcerated parents between ages of 14 through 21. This unique program focuses on creative expression, character development and positive life skills that will expand their opportunities as these youths move through life.

Honorable Judge Sidney H. Stein, NYSD

Farris Phillips #377-65-054

Page # 2 Cont…

CPP aims to provide an educational environment directly on the College Campus with qualified tutors who major in STEM education concentrating on a specific focus to enhance high school grade level and/or GED assistance. CPP goal is to counteract the appeal of the streets while feeding our youths of today information and skills needed to encourage, influence and prepare today's youth for tomorrow's preparation for college.

I am more than sure that Mr. Farris Phillips will enjoy his every moment working here sharing his special gift and life lessons to communicate with our kids, some of the most at risk youths in the history of our city.

Accordingly, we are extremely pleased to offer Mr. Farris Phillips immediate employment and would recommend that he work in any establishment where troubled at risk youth are, specifically those impacted by the Criminal Justice System.

Thank you for your time, attention and any consideration given this matter during our Nation's current proclamation on declaring a National State of Emergency.

Respectfully yours,

T, Stevens

President and CEO

# Dear Honorable

# Judge Sidney Stein

My name is Fabian Torres I'm writing you because I've been made aware that my father Farris Philips may be eligible for early release due to the corona virus pandemic. Today I am 31 years old and my father has been incarcerated since I was just 5 years old. Although he's been in prison for most of my life he's been the most positive influence and helped make me the man that I am today. Since I was a child the countless visits, letters and phone calls have kept our relationship solid. He has been a great father to me despite his absence. Knowing him is to love him and if you had a conversation with him you wouldn't have any idea of his criminal history. He was arrested when he was just 22 years old and we both understand that he's made some terrible mistakes as a youth. This year he will be 49 years old and has served over 27 years in prison. We have such a supportive loving family who's looking forward to his return and ready to welcome him with open arms. I speak to him daily and there's nothing more he's looking forward to than spending time with his family. I've been waiting on this day for 27 years so if his release can be expedited I would be elated. I really appreciate your time and consideration concerning this matter. Wish you and your family well..

Sincerely,
    Fabian Torres.

DEAR HONORABLE JUDGE SIDNEY STEIN,

My name is Azee Patterson and I wanted to speak on Farris Phillips behalf. I was housed at Danbury Federal Correctional Institution with him for two years and we were cellmates. I learned so much from this guy. He was a role model for a lot of guys. What gave me so much respect for him was watching him do his time and making the best out of a bad situation. We talked a lot and he gave me nothing but good positive feedback as my time was coming to an end. He stayed on me and helped change my mind set. He made self healing look so easy! I then began to watch his routine from day to day. From his reading books to working out and the visits with his loved ones was very IMPORTANT to him! If you were from the city he's the type of guy that will look out for us by offering rides so that the next inmate could receive a visit with their family. My family doesn't drive so him doing that for me was a blessing in itself. Farris Phillips deserves an early release. He's not just inside doing time and it's not easy to get by without any Incident reports. This man really inspired me to change! I didn't know where to start coming home after 7 years but my life is on track now. I work for nonprofit organization call SOS (Save Our Streets) We are an Anti-gun organization that denounces gun violence in our community. A great job opportunity presented itself for an emotional speaker going into schools and talking to youth. We do things like that as well. I believe he will be a great access to this organization. Fairrs Phillips has a lot to offer the program and I pray that the federal justice system has some leniency on the time that he has left. To take the time he has served into consideration and give him an early release due to this Covid 19 pandemic. Thank you.

Sincerely,
Azee Patterson

# Dear Honorable Judge Sidney Stein,

My name is Porfirio Amaro. I am writing to you today on behalf of inmate #37765-054 Farris Phillips. I was fortunate in a difficult part of my life to meet this man and be around for several years. We build a great foundation for a friendship which to this day we still maintain. Since I first met Mr Phillips, he has always carried himself with a positive attitude and always looking to better himself even in his situation and through these difficult times. We've participated in programs together and converse about everything from family, which he maintains a close relationship to things we both want to accomplish once back into society. I've watched him coach basketball teams in facilities and speak to the younger generation while keeping a positive attitude. One thing he always expresses to anyone willing to hear is his decisions during his youth and expresses remorseful for them without any regret or blaming anyone but himself because of those decisions, he knows how it has affected his family, who still visits and maintains correspondence with him. I appreciate your time reading these few lines during these hard times.

Thank you,

Porfirio Amaro

Dear Honorable Judge Sidney Stein,

My Name Is Ricardo Henderson.And Im Writing This Letter To You On The Behalf Of Farris Phillips, Register Number# 37765-054.I Was Also Incarcerated With Farris Phillips For 2 Years And Them 2 Years I Was Doing Time With Farris Phillips Was My Last 2 Years Of My 10 Year Sentence.He Did A Lot For Me Is Them Last 2 Years.He Helped Me Get Ready To Return back To Society.He Always Told me Family Was important.Being There For Your Loved Ones Is Priceless.He Was Very Big On Family.He Told me it's Better To Work For Your Money Than To Look Over Your Shoulder Every time You Make A Dollar.He Always Told Me To Think Before I Make A Decision.And To Always Be Aware Of My Consequences.He Was Always A Positive Person To Be Around.I Learned So Many Things From Farris Phillips And Im Forever Grateful For Meeting Him.I Hope This Letter Gives You Somewhat Of A Outlook On The Man He Is Today.Thank You For Taking This Letter Into Consideration.

Yours Truly
Ricardo Henderson

Dear Judge Honorable Sidney Stein,

My name is Donna Phillips the little sister of inmate Farris Phillips. During the course of his concentration we have lost several family members including our Mother and Sister. As this CoronaVirus has spread all over the world I think it will be great if my brother will be released so he can spend time with his loved ones. It's been a hard and long 27yrs without him my brother. I wouldn't want nothing more for us to reunite and greatly appreciate it. You will consider my brother's condition released, during the tragic crisis.

Yours Truly,
    Donna Phillips

Dear Honorable Judge Sidney Stein.

My name is Kevin Phillips and I'm writing to you in concern of my brother Farris Phillips 37765054, Danbury Connecticut. Your Honor I would like to start off by saying that I have a strong belief in God in knowing through him in prayer all things are possible even change in the way man or woman live their lives, and I speak from my heart. I've seen and I see that's strong belief in God in my brother Farris over the years that I have visited him.He always have a discussion lined of God in forgiveness and wanting to be forgiven by showing strong emotional remorse for the many things that went wrong in his life. Your honor I'm a strong believer in change as well as second chances in life at redemption I,am a living example of that,and I see it in Farris,my brother that same change of wanting to live a better life, and redeem the respect and love of his family and society as well.

Your Honor I trust and believe in God in knowing that my brother Farris is a changed man and deserves a second chance.

Your honor in closing I pray that you and your family are safe from this terrible pandemic that we are all faced with may God be with us all. Thank you for your time and attention in this matter.

Sincerely
Kevin Phillips

Dear Honorable Sidney Stern Judge,

Re:In the case of Farris Phillips,

First I would like to thank you for taking the time out to hear from Family for Farris Phillips my name is Alvin Phillips I am the brother of Farris Phillips the oldest brother. I am writing you in regards to my brother I pray that you will give him the opportunity to regain his freedom ,I feel as though myself that he has grown and understand the mistakes he made as a young man and I believe in my heart that Farris wants to do better in life for his family and friends and I also believe that he has made amends for his mistakes he is truly a blessing to our family and can teach the younger generation a lot about life and experiences so that they would not find themselves in the same situation in to consideration.

Thank you in advance ,

Alvin Phillips

4/13/20

Donald Smith

300 W 147th ST APT 2B

New York, NY 10039

Honorable Sidney Stein

Dear Honorable Sidney Stein,

  I am writing you in regards to my cousin inmate #37765054 Farris Phillips, who I am hoping you will be able to grant an early release based on the Coronavirus epidemic. Farris Phillip suffers from a medical condition that if he comes in contact with this virus, could cost him his life. Farris Phillips has done 97 percent of his required time, which is 28 years. Farris Phillips is very remorseful for his actions and is also a changed person in a very positive way. I know this because I always visit him and I stay in touch with him. I can truly vouch for his positive change and also to Farris being remorseful. I am a local #3 electrician for 25 years and I've lived at my residence for over 20 years. My entire family would be so grateful Honorable Sidney Stein, if you would grant Farris Philips # 37765054 an early release. Thank you.

Sincerely Yours,

Donald Smith

Dear HONORABLE JUDGE SIDNEY STEIN

My name is Latonia jacobus and im FARRIS PHILLIPS fiance..im writing this with a compassionate heart for you because its all up to you...it will be amazing thing to do to release Farris...and on the behalf of myself and his family we are very grateful for this opportunity to tell you what he mean to us ,how much he changed after 27 yrs...Farris is different from any other man i have encountered in the streets or in prison...

I lost my father when I was 7 years old and I was a daddy's girl I've been in and out of relationships ,I have two sons from two different father my oldest son father passed away when he was 12... and sometimes I feel like I failed them because I was putting the wrong man in their life... I've never looked at any man in my life to fill the void of my dad love. ever since we reunited (Nov.29 2015) with Farris Phillips(whom i knew since i was 14)we have the same up bringing... I feel like God and my dad sent farris to me. THIS man has made me stronger than I've ever been and he's just been amazing his judgment his strength his Charisma ,intelligence to do right, eat right.He don't get involved with nothing negative .. it's not who he is the reason he's in there ..its what he did... He had no guidance,no one to look up to...My youngest son is autistic and loves Farris ..farris help me to help him...he will and is truly a role model to them...he love my son as if they was his...i cant see life without him...and cant wait to start a future with him...I KNOW IN MY HEART THE DECISION TO RELEASE HIM WILL NOT BE A MISTAKE...FARRIS IS APART OF MY LIFE AND HIS FAMILY AND FRIENDS...ALL OF US LEARN FROM HIM AND FEED OFF HIS STRENGTH...

Thank you for taking the time out for reading this letter from the heart giving this pandemic that world is facing right now,,and that you and your family are in the best of health and sending well wishes

Sincerely Yours

Latonia Jacobus

Dear Honorable Judge Sidney Stines,

With all due respect, I'm requesting Early release for my cousin Farris Phillips
#37765-054, who is presently incarcerated at
F.C.I., Danbury.

Farris has been incarcerated since 1992. Farris has almost completed his sentence,
serving his time with good behavior.

I'm a retired Corrections Officer from Rikers Island. My concern and reason for this
request is the Covid-19 Virus is now spreading in the prisons, and a lot of the staff and
inmates are being infected. Some of the inmates locked in with Farris are sick, I'm very
afraid Farris could get infected with Covid19 and possibly die in jail.

I'm praying that with this request, there is a chance to save Farris from getting sick in
prison. His family loves him very very much.

Any consideration towards this request would sincerely be appreciated. Thank you

Respectfully Submitted,
Wendy Lynch
201 931-3372

Raven Phillips
511 Ocean Avenue
Jersey City, NJ 07305
(678) 545-8404
ravenphillips80@yahoo.com
April 13, 2020

Dear your honor Judge Sidney Stein,

    I am humbly requesting that you grant my cousin Farris Phillips # 37765054 an early release from incarceration. Farris Phillips has been incarcerated in Federal prison since 1992. During this time, he has not had any behavioral issues. With this current pandemic and the good behavior I am asking Your Honor to please allow my cousin to be released as soon as possible. I believe from conversations between my cousin and I that the time that he has served has taught him and changed him into a mature man. I feel that he is a man ready to come home and be a great father, grandfather, cousin, nephew, sibling and citizen. Please issue an early release for my cousin Farris Phillips #37765054 it would be so greatly appreciated. Thank you for your time and for reading and considering my request.

    Sincerely,
        Raven Phillips

April 13,2020

Dear Honorable
Judge Sidney Stein,

I am writing to request your permission/approval for my cousin Farris Phillips #
37765054 to be released early from his sentence.

Farris Phillips #37765054 is incarcerated at the Federal Correctional Institution
Danbury. He has been in jail since 1992.

 Please, your honor, can you issue an early release he has served most of his
sentence. I believe in my heart that he is reformed.  The coronavirus pandemic has my
family extremely worried.  Farris Phillips has displayed good behavior throughout his
incarceration.

I am extremely grateful you allowed me the opportunity to
write this request.  Releasing Farris Phillips #37765054 would be amazing. My family
would be overwhelmed with gratitude.

Your time and consideration would be greatly appreciated.

Respectfully Submitted

Michelle Smith
205 Hadrian Circle SW
Atlanta, Georgia 30349
201 892 1704

Michael Alves

78 Riverview St

Brockton, MA 02302

michaelalves87@hotmail.com


April 11,2020

Dear Honorable Judge Sindey Stein,

    My name is Michael Alves and I am proud to offer a recommendation on behalf of Farris Philips. I have personally known Farris Philips for about 5 years. I was an inmate at Danbury FCI and got the pleasure of knowing Farris from the day I became an inmate. During the time I was able to build a relationship with Farris, he left me with such a great impact on my life. He was an individual who always showed up early, worked so hard, polite and respectful to everyone. When Farris was given a task he would complete the task on time and made sure it was completed accurately and thoroughly. Which I took liking to. Also he helped me get my health better by showing me a healthy way of living and eating. He was someone that everyone looked up to at a high standard and was someone self driven to motivate his peers. In addition, Farris is a family oriented person who has always presented himself with level headed and grace.


It is with great confidence I would recommend Farris Philips as someone who, I truly believe, possesses the character and judgement for the betterment of our community.

If for any reason you have any question please feel free to contact me at

~Contact #508-521-5967

    Sincerely,

        Michael Alves.

April 13, 2020

Dear Honorable Judge Sidney Stein,

My name is Robert Anderson and I am writing this letter for a very close friend of mine, Farris Phillips #37765054. I have known Farris for over twenty-years and I have never met an individual who has changed as he's grown older like the positive person that I am writing for. I have seen, first-hand, the caring person, the help he has provided and continues to do so with the youth in prison is incredible. I talked to Farris, while also being incarcerated, about his plans when he is no longer a prisoner, how he will become a football coach, like myself, to mentor and connect with the youth and give back to his community. I truly believe his dreams all came from the heart! He is an incredible, caring human being and realizes the mistakes he made as a young man and wishes to redeem them in every single way. I would vouch for this man in front of everyone including God because I believe in this man. I truly believe Farris deserves a second chance. Please show in your heart to give, my dear friend, Farris a second opportunity for mistakes he made in his twenties and who is now in his upper forties to redeem himself.

Thank you I appreciate your time and compassion.


Robert Anderson Jr

34 Linwood Street

Malden, MASSACHUSETTS 02148

978-288-9790

P.S. If there is anything my family and I can do to help and support Farris and his family in a new chapter of his life, I would like to.

April 13, 2020

To The Honorable Judge Sidney Stein:

Re: Character Reference-Farris Phillips #37765054

My name is Monica Anderson and I have been employed with Putnam Investments, Boston since July 17, 2000. I have been an Administrative Assistant and Fund Coordinator for a period of twenty years.

The purpose of this letter is to provide a character reference for Farris Phillips and confirmation that I have known Farris for over five years. Throughout the five years I have had the opportunity to interact with Farris, while on visits to Danbury Correctional Facility, visiting my husband Robert Anderson, Jr. The short interactions turned into a familiar friendship and very welcoming. Farris is very friendly as well as very giving. Several times, while I would await for Robert to enter the Danbury visiting lobby, Farris would always say hello and ask if I was okay. Often he would ask if there was anything I needed.

In conclusion, I know for a fact, if given the opportunity to be allowed into society, Farris will have no problem adjusting into our community. Farris will have all the tools needed to start his life over with the help of family and friends.

Sincerely,

Monica Anderson

34 Linwood Street

Malden, MASSACHUSETTS 02148

978-767-3771

Dear Honorable Judge Sidney Stein,

My name is Kenneth Kemp and I humbly submit this letter on behalf of Farris Phillips, my friend who is currently incarcerated at the Federal Prison in Danbury, Connecticut.

Farris and I have been friends for over twenty years. We met while I was serving multiple Life sentences for violating non violent Federal drug laws, (in 2016 President Obama commuted my sentence and I was released later that year).

Our friendship has allowed me to witness first hand how much Farris has grown. He has become a man that now accepts responsibility for the bad choices that so many of us make as young adults. He has expressed to me on numerous occasions that all he wants is the opportunity to make the people who love him proud and to be a productive member of his community.

Judge Stein, if it is at all in your power, please consider Farris for early release. It would be a tragedy if the world never gets to see the man Farris has become because of COVID-19.

Respectfully,

Kenneth Kemp

April 23, 2020

Tanika Smith

150 Overlook Ave

Hackensack NJ 07601

Dear Honorable Judge Sidney Stein,

My name is Tanika Smith, I am writing to you on behalf of Federal Inmate Farris Phillips #37765-054. I have known Mr. Phillips since I was 15yrs old and I am now 45yrs old. I currently work for the Federal Government, a job which I accredit Mr. Phillips for pushing me to take the test and secure my future at 24yrs old. Mr. Phillips is and has always been a great friend. Since which leads me to writing you this letter. As a friend to Mr. Phillips, I really would like to see him released to be with his family. At this time of Pandemic and the loss of life that we have been experiencing in the world, I would hate to lose my friend while he is incarcerated due to this virus. Mr. Phillips suffers from a few health issues and would greatly suffer if he were to get sick in his current predicament.

I do understand that the choices that Mr. Phillip made in his young adult life is what has caused him to be incarcerated. I am not excusing that, nor am I making excuses as a reason to have Mr. Phillips released. I am merely stating that as his Friend, who has seen how being incarcerated has made him realize all that he has missed and made him a better man who can't wait to come home and hug his loved ones, be a better person and show that he has learned from his mistakes. I do believe that Mr. Phillips has repented for his crimes, learned from his past mistakes and would benefit from being a part of his family's life. Farris has served almost 95% of his sentence, he has missed a lot of important moments with his loved ones. He has lost family members and friends since being incarcerated. As a friend who has witnessed the change in Farris Phillips, I am humbly asking that you consider releasing him back into society to be with his family.

I appreciate you taking the time to read my letter.

Mrs. Tanika Smith

# EXHIBIT B



April 3, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU OF PRISONS

FROM:        THE ATTORNEY GENERAL

SUBJECT:   <u>Increasing Use of Home Confinement at Institutions Most Affected by</u>
<u>COVID-19</u>

      The mission of BOP is to administer the lawful punishments that our justice system imposes. Executing that mission imposes on us a profound obligation to protect the health and safety of all inmates.

      Last week, I directed the Bureau of Prisons to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates, while ensuring we successfully discharge our duty to protect the public. I applaud the substantial steps you have already taken on that front with respect to the vulnerable inmates who qualified for home confinement under the pre-CARES Act standards.

      As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions. I would like you to give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards. In addition, the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities, consistent with the guidance below.

I.  <u>**IMMEDIATELY MAXIMIZE APPROPRIATE TRANSFERS TO HOME CONFINEMENT OF ALL APPROPRIATE INMATES HELD AT FCI OAKDALE, FCI DANBURY, FCI ELKTON, AND AT OTHER SIMILARLY SITUATED BOP FACILITIES WHERE COVID-19 IS MATERIALLY AFFECTING OPERATIONS**</u>

While BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions. I am therefore directing you to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations. You should begin implementing this directive immediately at the facilities I have specifically identified and any other facilities facing similarly serious problems. And now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer.

For all inmates whom you deem suitable candidates for home confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred. It is vital that we not inadvertently contribute to the spread of COVID-19 by transferring inmates from our facilities. Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations.

I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.

Given the speed with which this disease has spread through the general public, it is clear that time is of the essence. Please implement this Memorandum as quickly as possible and keep me closely apprised of your progress.

## II.   PROTECTING THE PUBLIC

While we have a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public. That means we cannot simply release prison populations en masse onto the streets. Doing so would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses.

That risk is particularly acute as we combat the current pandemic. Police forces are facing the same daunting challenges in protecting the public that we face in protecting our inmates. It is impossible to engage in social distancing, hand washing, and other recommend steps in the middle of arresting a violent criminal. It is thus no surprise that many of our police officers have fallen ill with COVID-19, with some even dying in the line of duty from the disease. This pandemic has dramatically increased the already substantial risks facing the men and women who keep us safe, at the same time that it has winnowed their ranks while officers recover from getting sick, or self-quarantine to avoid possibly spreading the disease.

The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates. Thus, while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context.

I believe strongly that we should do everything we can to protect the inmates in our care, but that we must do so in a careful and individualized way that remains faithful to our duty to protect the public and the law enforcement officers who protect us all.